Clarke vs. Belmear.—1829.

---

CLARKE *vs.* BELMEAR.—*December,* 1829.

A return by the Sheriff to a writ of *fieri facias,* that he had levied upon "part of a tract of land called B, supposed to contain, &c." is not sufficient, would be quashed on motion, and unavailable in ejectment to prove title in a purchaser.

A purchaser at a sheriff's sale is entitled to the benefit of that officer's return, both to the *fieri facias,* and *venditioni exponas;* and when the description of the subject levied on, according to the schedule returned under the first writ, is defective, it may be amended and rendered certain, by the return of the sheriff's proceedings, under the second writ.

So a levy under a *fieri facias* which is defective in the description of the property levied on, may be amended by the sheriff's return of the property sold

under such writ, the return of the sale describing the property with sufficient certainty.

A purchaser under a judicial sale has a right to resort to the whole judicial proceedings, under which his title accrued, to ascertain it.

The right of a party to obtain a writ of *habere facias possessionem*, under the act of 1825, *ch.* 103, does not relate to the time the execution was issued, but to the time when the lands were sold.

APPEAL from *Prince George's* County Court. This was a motion to quash a writ of *fieri facias*, and a writ of *venditioni exponas*, and the returns, &c.

On the 5th of December, 1822, a *fieri facias* issued out of *Prince George's* County Court, on a judgment rendered in the said court in favour of *William Holmes* against *Walter S. Clarke*, to which, at the return day, the sheriff made the following return: " laid as per schedule, and not sold for want of time,"— the schedule returned stated, that he had taken part of *Burgess' Delight*, part of *Clarke's Fancy* and part of *Hickory Thicket*, supposed to contain two hundred and seventy-five acres. A writ of *venditioni exponas*, thereupon issued, commanding the sheriff to sell this property, which he returned " not sold for want of time." *Alias* writs of *vendi. ex.* were issued, the last of which was returnable to October term, 1825, of said court, to which similar returns were made. On the 13th of January, 1826, another writ issued, returnable to April term, 1826, to which the late sheriff made the following return, " made to the amount of five hundred dollars by a sale of the land in the schedule contained to *Francis Belmear* on the 17th of June, 1826, the said lands consisting of part of a tract called *Hickory Thicket*, part of a tract called *Clarke's Fancy*, and part of a tract called *Burgess' Delight*, lying and being in *Prince George's* County; and beginning for the whole, at or near a stone near the main road that leads to the mill now occupied by *Jacob Wheeler*, thence a southerly course, so as to include the dwelling house lately occupied by *Philip Green*, and the orchard contiguous thereto, bounded on the *south* by a line drawn *easterly* to *Patuxent* river, then bounding on the said river, to the extent of said land, on the *north* with said land, to the begining, containing two hun-

dred and seventy-five acres, more or less, being the whole of the said several tracts, of which the defendant, *Walter S. Clarke*, was in possession, at the time of the sale, and the whole of his right, title and interest, in and to the same, being by the aforesaid sale transferred by me to the said *Francis Belmear*, by whom one hundred dollars was paid to *William Holmes* the plaintiff in the judgment at the time, and the balance paid to me by said *Belmear. Thomas Osbourne, Sheriff.*" And the said *Thomas Osbourne* at the time of making said return, filed in court here with the said writ, the following schedule, to wit: "A schedule of the property of *Walter S. Clarke*, taken by virtue of an execution issued out of *Prince George's* County Court, at the suit of *William Holmes*, the property, to wit, part of a tract of land by name *Burgess' Delight*, and part of a tract of land called *Hickory Thicket* and *Clarke's Fancy*, lying in *Prince George's* County, containing two hundred and seventy-five acres, and appraised at ten dollars per acre. Two thousand seven hundred and fifty dollars. *Nathan Waters, seal. Samuel Waters, seal.* Appraised this 17th day June, 1826. Sworn appraisers."

At April term of said court, 1827, *Francis Belmear* the purchaser, moved the court for a writ of *habere facias possessionem*, to put him in possession of the property so by him purchased, which was accordingly ordered, and issued returnable to October term, 1827, when the sheriff returned "possession delivered," which said writ at that term was on the motion of said *Clarke* quashed by the County Court, in consequence of not describing with sufficient certainty the lands, of which possession was to be delivered, the said *Walter S. Clarke* then moved the court, that said writs of *fieri facias*, and *venditioni exponas*, and the returns thereto be quashed, and at the same time filed the following reasons: 1. For that the description of the lands in the said writs and returns is uncertain, and consequently the executions are void. 2. Because the description of the lands in the return of the *fi. fa.* which was first sued out in this cause, upon which return, the *v.e.* is predicated, is uncertain, and the writ aforesaid consequently void.

This motion was overruled by the County Court, and a second *habere facias* ordered.

The defendant *Clarke* appealed to the Court of Appeals.

The cause was argued before BUCHANAN, Ch. J. and EARLE, MARTIN, ARCHER and DORSEY, J.

*A. C. Magruder* and *J. Forrest*, for the appellant contended,

1. That the *fieri facias* was void for uncertainty, and that the court erred in adjudging a second writ of possession to be issued. 2. The court erred, because the act of Assembly upon which the writ of *habere facias possessionem* issued, was not in force, when the levy under the *fieri facias* was made, nor when the writ of *venditioni exponas* issued, and it would be giving an *ex post facto* operation to the law to make it applicable to cases of property already taken in execution. 3. Because the sale was made after the return day of the writ of *venditioni exponas.* On the 1st point they referred to *Underhill vs. Devereaux,* 2 *Saund.* 69, *a (note* 2.) *Pullen vs. Purbeck,* 12 *Mod.* 355. *Williamson vs. Perkins,* 1 *Harr. and Johns.* 449. *Hammond vs. Norris,* 2 *Harr. and Johns.* 147. *Berry vs. Nicholls, Ib.* 508. *Fitzhugh vs. Hellen,* 3 *Harr. and Johns.* 206. *Thomas vs. Turvey,* 1 *Harr. and Gill,* 435. *Fenwick vs. Floyd, Ib.* 172. On the 3d point they referred to *Barney vs. Patterson,* 6 *Harr. and Johns.* 182.

*Stonestreet* and *J. Johnson,* for the appellee.

The sale took place on the 17th of June, 1826, and the writ of *habere facias possessionem,* under the act of 1825, *ch.* 103, was moved for, and ordered at April term, 1827, returnable to October term, 1827. The act of 1825 gives the party one entire term, and four days of the succeeding term, to show cause against the issuing of the *habere facias.* This time expired before the writ was ordered. The act of 1825 says nothing about the time the issuing of the writ under which the sale is made. If the *sale* is made *after* the passage of the law, the purchaser is entitled to his *habere,* by the express terms of the statute; although the writ under which it may be effected is

sued previously. On the *first* point, they contended, that the *fieri facias*, and their return thereto, the several writs of *venditioni exponas*, and their returns, should be connected together, and so considered they present a perfect levy and sale, and the lands sold are sufficiently described. In *Thomas vs. Turvey*, 1 *Harr. and Gill*, 435, one of the schedules described the land correctly, and it was adjudged sufficient to cure the defects of the rest. It is the sale and not the return which transfers the title, 6 *Harr. and Johns.* 182. The return is only useful as evidence of the sale, and may be dispensed with if there be a note or memorandum in writing—the sheriff may correct his return if he ask leave to do so in due time, *Berry vs. Griffith*, 2 *Harr. and Gill*, 337. But it is too late now to move to set aside the return to the *fieri facias*, if it is defective—the application should have been made immediately upon its return, or at all events upon the return of the first *venditioni exponas*. *Dand vs. Barnes*, 1 *Serg. and Low*, 291. (6 *Taunt.*) *Fletcher vs. Wells*, *Ib.* 352. (6 *Taunt.* 191.) Four years intervened between the issuing of the *fieri facias* and the *venditioni exponas* under which the sale was made, and eighteen months between the sale and the present motion. The County Court at April term, 1827, by ordering the *habere*, adjudged the sale and returns valid, it was therefore too late at the ensuing October term to bring the same question before them, they could not interfere with a judgment pronounced by them at a preceding term. *Jacob L. D.* tit. *term*, 212. *Munnikuysen vs. Dorsett*, 2 *Harr. and Gill*, 374.

MARTIN, J. delivered the opinion of the Court.

After recapitulating the facts as set out in the commencement of the report of this case, the Judge proceeded to state, that from these proceedings *Clarke* has appealed and contends, 1st. That the writs of *fieri facias* and *venditioni exponas* and the returns made to them are void for uncertainty; and 2dly. If they are sufficient, *Belmear* was not entitled to the writ of *habere facias possessionem* under the act of 1825, as the lands were in execution prior to the passage of that act.

The description of the property contained in the schedule returned by the sheriff to the *fieri facias* was, *"part* of *Burgess' Delight*, part of *Clarke's Fancy*, and part of *Hickory Thicket*, supposed to contain 275 acres."  Did the case rest upon this return alone, we should not consider it open for discussion. It has been solemnly determined by many adjudications of this court, that such a return is not sufficient, that it would be quashed on motion, and would be unavailable in an ejectment to prove title in the plaintiff. *Williamson vs. Perkins*, 1 *Harr. and Johns.* 449. *Hammond vs. Norris*, 2 *Harr. and Johns.* 147. *Fitzhugh vs. Hellen*, 3 *Harr. and Johns.* 206. *Fenwick vs. Floyd*, 1 *Harr. and Gill*, 172. *Thomas vs. Turvey*, 2 *Harr. and Gill*, 435.

But it does not rest upon this return alone ; the sheriff having returned he had not sold the lands under the *fieri facias* for want of time, a *venditioni exponas* was issued, commanding him to sell the lands before taken by him, under the *fieri facias*,—to this *venditioni* he makes a special return, stating in substance, that he had sold the lands before taken in execution, under the *fieri facias*, gives a description of those lands by metes and bounds, and that *Francis Belmear* became the purchaser for $500, which sum had been paid by him. The question then arises, whether the purchaser is not entitled to the benefit of *both* those returns to shew the description of the lands he had purchased under them ?  This was a judicial sale, and the purchaser claims title under the whole proceedings, embracing both writs and returns. The *fieri facias* is the effective writ in these cases, it not only authorises the sheriff to seize, but to sell, very different is the office of a *venditioni exponas*. That confers no new power to the sheriff; it does not authorise him to do any act, that he might not have done under the *fieri facias*. It is only a mandatory writ, and directs him to carry the *fieri facias* into effect, by selling the lands taken in execution under it, and when the lands are sold, the return to the *venditioni* relates to, and in legal effect, becomes part of the return to the *fieri facias*.  Suppose in this case the sheriff had sold the lands under the *fieri facias* without the aid of a *venditioni exponas*, and had returned that he had sold the lands in the schedule mention-

ed, which lands were contained within certain metes and bounds set out in the return to the sale, can there be a doubt that the return thus correctly describing the lands would not be sufficient, to give certainty to those mentioned in the schedule? If then the description in the schedule might be corrected by the return to the sale, if made immediately under the *fieri facias*, it cannot be perceived why it should not be received for that purpose, when made to a *venditioni exponas*, whose only office is auxiliary to the *fieri facias* and to carry it into effect. The purchaser claims title under the united effect, of both those writs, and if certainty is the object to be attained, he has a right to resort to the whole judicial proceedings, under which his title accrued to ascertain it.

It has been contended that the description of the lands in the return to the *venditioni exponas* is not sufficiently certain, to ascertain the location of them. That they might have been described with more accuracy cannot be doubted, but we think there is sufficient certainty, to enable the party to make a true location of them.

The second objection to the proceedings of the court, that these lands were taken in execution prior to the act of 1825, *ch.* 103, cannot avail the appellant. The right of the party to obtain a writ of *habere facias possessionem* under that act, does not relate to the time the execution was issued, but to the time when the lands were sold, and it appears from the record, the lands in this case were sold on the 17th day of June, 1826, long after the passage of the act.

JUDGMENT AFFIRMED.