PREISSMAN *v.* CROCKETT ET UX

[No. 35, October Term, 1949.]

52

54

*Decided December 8, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Isidore Gordon Preissman* in proper person.

*Herbert L. Grymes* for the appellees.

GRASON, J., delivered the opinion of the Court.

On November 5, 1937, Feldman's Incorporated recovered a judgment against Edgar Crockett and Blanche Crockett, his wife (appellees) in the Peoples Court of Baltimore City, in the sum of $56.42, with interest and costs. This judgment was recorded in the Superior Court of Baltimore City. On August 30, 1948, the judgment creditor caused to be issued a writ of *fieri facias* on said judgment out of said court, returnable to the first Monday in October, 1948. On September 1, 1948, a levy was made upon the leasehold property owned by the appellees and known as 415 S. Furrow Street, Baltimore City, at the instance of the Sheriff of said City, by his deputy, Jesse J. Fillings. The property was advertised and offered for sale as per terms of the advertisement, and sold to Isidore Gordon Preissman for the sum of $1050.00. It is conceded that the judgment is junior to a purchase money mortgage given by the appellees to Wyman Park Federal Savings and Loan Association. When the property was knocked down to Preissman (appellant) he gave the auctioneer his check for $1050.00, the full amount of the purchase price, and the auctioneer gave him a written receipt to which was attached a copy of the advertisement of the property sold.

On February 3, 1949, the appellees filed a motion to quash the writ of *fieri facias,* and assigned as reasons therefor that the proceedings did not include the Wyman Park Federal Savings and Loan Association which held the mortgage to which we have referred; that the record failed to show that the sheriff made a return to the October return day; that there was no levy or seizure by the sheriff of the property sold; that the proceedings failed to show an appraisement of the property before the sale; that the price the property brought at the sale was grossly inadequate; that the sale was not advertised in accordance with section 7, Article 83 of the Code of Public General Laws; and for other reasons. Testimony was taken in the court below, the matter considered,

and the court quashed the writ of *fieri facias*. From this action the appellant appeals.

Under a writ of *fieri facias*, where property is seized by the sheriff for the purpose of realizing the debt of a judgment creditor, only the right, title and interest of the owner or owners of the property seized is sold. It follows that it was not necessary to make the Wyman Park Federal Savings and Loan Association, the holder of a purchase money mortgage on the property sold, a party to the proceedings.

We think that a levy and seizure of the property sold was made by the sheriff. On August 30, 1948, Mr. David Wright, Jr., attorney for Feldman's Incorporated, filed an order with the Clerk of the Court to issue a *fieri facias* on the judgment involved in this case and to make the same returnable to the October return day, which was the first Monday in October, 1948. Fillings, a deputy sheriff, went to the home of the appellees, at 415 S. Furrow Street, rapped on the door, and was received by Mrs. Blanche Crockett, one of the appellees. He handed her an envelope which contained an itemized bill showing the amount of judgment, interest thereon, and the costs accrued to September 1, 1948. At the bottom of this itemized bill, in bold black print, is a notice that the property was being levied upon and that the sheriff "is preparing the same to be sold at public auction. To stop these proceedings you must pay this bill immediately." Then in big type: "CAUTION-Payment must be made only to the Sheriff of Baltimore City, or his Deputy. Pay no money to any other person under any circumstances".

It is the duty of the sheriff, upon the receipt of a writ of *fieri facias*, to go upon the land and levy upon it and notify the defendant in possession of the purpose of his entry. The return of the sheriff should show with accuracy and precision when and upon what property he levied, and it is absolutely indispensable that the levy should be made on or before the return day of the writ. It is necessary that a description of the property levied

upon be given as will serve to identify it with reasonable certainty and without difficulty. Only such seizure is necessary as the character of the property admits of,

"And this can be only an entry upon the land, and a declaration by the sheriff, as part of the act, that his entry is made for the purpose of levying the execution, accompanied by a record of his proceeding."

*Poe, Pleading and Practice, Tiffany's* ed., Vol. 2, sec. 657; *Dorsey v. Dorsey,* 28 Md. 388; *Miller v. Wilson,* 32 Md. 297; *Jarboe v. Hall,* 37 Md. 345; *Elliott v. Knott,* 14 Md. 121, 74 Am. Dec. 519; *Wright v. Orrell,* 19 Md. 151; *Gaither v. Martin,* 3 Md. 146.

In this case the record shows that the deputy sheriff entered upon the property levied upon and seized, gave notice by the papers served upon Mrs. Crockett, and also told her that the property was being seized for payment of judgment in the case referred to, and not to pay any money except to the sheriff. *Duvall v. Perkins,* 77 Md. 582, 26 A. 1085; *Texor v. Shipley,* 86 Md. 424, 38 A. 932.

On the back of the *fieri facias* is the notation:

"Seized, Levied and Appraised the within described property, as per Schedule herewith returned. *Nulla Bona* Fee: $7.93

J. C. Deegan, Sheriff".

The return of the *fieri facias* to the sheriff by his deputy also shows that the property levied upon was known as 415 S. Furrow Street, and is described by metes and bounds, courses and distances. The deputy sheriff evidently meant by *"Nulla Bona"* that he levied upon no personal property. He states he did not in his testimony, and says he levied on 415 S. Furrow Street. It was not necessary, to effectuate a seizure and to constitute a valid levy, that the deputy sheriff should go through this house from cellar to garret. What he did was a seizure, and the papers which he tendered to Mrs. Crockett, and what he told her, informed her of exactly what was taking place.

In *Poe, Pleading and Practice, supra,* section 658, under the caption "The schedule", it is said: "The material and indispensable part of the schedule is the description of the property itself."

With the return there was a description of the property levied upon, by metes and bounds, courses and distances. This is the usual practice in Baltimore City, and it is hard to conceive a more accurate schedule, *Ressmeyer v. Norwood,* 117 Md. 320, at page 333, 83 A. 347.

Objection is made to the appraisement, but the law does not require an appraisement. In *Miller v. Wilson, supra,* it is said: "There is no law in Maryland requiring an appraisement, and in *Williamson v. Perkins,* 1 Har. & J. [449], 451, it was conceded, by counsel on both sides, that an appraisement was not necessary. Mr. Evans in his book on *Practice,* 480, says there is no law in force in this State requiring it; but speaks of the usage as having acquired the force of law. It is very clear, however, that an omission of an appraisement is no ground of objection to an application for the writ of possession by a purchaser." See *Poe, Pleading and Practice, supra,* sec. 659.

It is contended that appellees had a right to select the paper in which the advertisement of sale was published. Code 1939, Art. 83, sec. 7. The record shows that on January 10, 1949, Sheriff Deegan wrote to Mr. and Mrs. Crockett inclosing a copy of the advertisement appearing in the Daily Record, and in that letter the sheriff wrote: "If it is your intention to settle this account before the date of the sale, it is suggested that you immediately communicate with this office." The advertisement inclosed gave notice to them that their property would be sold on Tuesday, February 1, 1949, at 10 o'clock A. M., at the Court House door, Calvert Street, in the City of Baltimore. The appellees disregarded entirely this letter. As early as October 29, 1948, Mr. Wright, the attorney for Feldman's Incorporated, wrote the appellees a special delivery letter, which they signed for and which appears in this record. In this letter it is stated:

"It is not my desire to add to your burdens, and before instructing the Sheriff to proceed with public Sale of all your interest to satisfy the judgment, I am again writing to you in an effort to have you liquidate the judgment plus interest and court costs.

"I shall withhold action until November 3rd, 1948, and would appreciate your contacting me prior to that date in an effort to arrive at an amicable arrangement for the payment of this balance."

The appellee Edgar Crockett testified that he was offended because he was not personally notified instead of his wife, and he supposed that the situation he found himself in was his fault. As the letter of Sheriff Deegan to the appellees was dated January 10, 1949, and the sale was not made until February 1st following, the appellees had an opportunity to object to the advertisement and to demand that the advertisement be made in a paper selected by them. This they did not do, and it constitutes a waiver of their rights to name the paper in which the advertisement appeared. Sheriff Deegan testified that the reason he advertised in the Daily Record was its rates were cheaper than in other papers published in Baltimore City, and he was trying to save money.

It is contended that the price for which the property was sold is grossly inadequate. The only evidence in the case that such was a fact is the appraisement of $4200.00 by three men who were intercepted as they passed by the property at the time of the levy, and who were not sworn. These men were not shown to be qualified to give an opinion of the fair market value of the property. The appellee Edgar Crockett testified that a property in the neighborhood of the property in question was sold for $4000.00. The appellant paid $1050.00 for the property, subject to a balance due on the mortgage held by Wyman Park Federal Savings and Loan Association, of $664.37, which would total $1714.37.

In *Darraugh v. Preissman*, 193 Md. 448, 452, 67 A. 2d 262, 264, the judgment was for $215.00. The property

was sold at sheriff's sale for $2600.00. The bill in that case alleged that the appellee Preissman contracted with Glass, the judgment debtor, to buy the property for $5900.00, subject to an annual ground rent of $66.00. We held in that case that mere inadequacy of price standing alone was insufficient to set aside a judicial sale, and that " 'courts maintain with jealous vigilance the titles of purchasers under judicial sales, and go very far in favoring and supporting them.' " *Harris v. Hooper*, 50 Md. 537. We do not think that the price which the property in question brought at the sale was grossly inadequate; and the conduct of the sale by the sheriff cannot be questioned for want of fairness, good faith, and the exercise of reasonable discretion.

The docket entries in this case show that the sheriff made a return on August 30, 1948. It is apparent that this entry is a mistake, for the property was not levied upon until September 1st. The law demands that a levy under a *fieri facias* be made before the return day, and if it is not so made a sale thereafter is void; but if the levy is made before the return day named in the writ, a return of the sheriff need not be made until after sale of the property levied upon. The fact is that the sheriff had not made a return at the time the motion to quash the *fieri facias* was filed, nor at the time the matter was heard before the lower court. The sheriff, on call by appellees, produced the papers which were then in his possession, and they were offered in evidence.

"The return of the sheriff was not made to the term at which the writ was returnable, nor could it be, as the sale was made at a day subsequent to the return day. * * * A sheriff may retain a fi. fa. in his hands, after a levy, and after an ineffectual effort to sell, not only until the return day has passed, but until several terms have passed, and may then sell." *Moreland v. Bowling*, 3 Gill 365, side page 502. See *Busey v. Truck*, 47 Md. 171.

In *Poe's Pleading and Practice, supra*, section 678, it is said: "The return should be carefully made, and should describe the property sold in such a way as to

enable it to be identified and located and to show plainly what property was levied on and sold; but while this particularity should always be observed, *it must be borne in mind that it is not the return of the sheriff that gives title, but the previous sale;* and where the return is defective, a deed from the sheriff or other memorandum, as required by the Statute of Frauds, will be sufficient." (Italics supplied.)

In this case the property was sold to the appellant, a receipt with a copy of the advertisement of the property given to the purchaser, signed by the auctioneer, and appellant passed his check for the full amount of the sale. This was a compliance with the Statute of Frauds, and title to the property sold then passed to the appellant. There was no infirmity in the proceedings prior to the sale that would vitiate the sale.

In *Barney v. Patterson,* 6 Har. & J. 182, page 204, it is said: "But it is not the return of the officer that gives title to a purchaser, but the previous sale; which was decided by this Court in the case of *Boring's Lessee v. Lemmon,* 5 Har. & J. 223. And it would be of dangerous consequence to *bona fide* purchasers, if after having paid their money for property sold under competent and legal authority, they should be at the mercy of officers who might make imperfect returns of executions, or if they pleased make no returns at all. But a sheriff's sale of land being within the Statute of Frauds, some memorandum in writing is necessary to be made." See *Miller v. Wilson, supra,* and *Wright v. Orrell, supra.*

For the reasons given herein, we are of opinion that the ruling of the lower court in quashing the writ of *fieri facias* in this case must be reversed. The appellant is entitled to a deed for the property which he purchased at the sheriff's sale in this case.

*Order of court quashing writ of fieri facias and setting aside sale reversed, with costs.*